IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHERRY D. BYLAND, | ) | CASE NO. 5:11 CV 75 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Sherry D. Byland, for disability insurance benefits and supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Byland had severe impairments consisting of fibromyalgia and chronic obstructive pulmonary disease.[1] The ALJ made the following finding regarding Byland's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant has the following additional limitations: simple unskilled tasks; no overhead lifting or reaching; no extreme fumes, dust, cold, heal [sic] or humidity.[2]

---

[1] ECF # 11, Transcript ("Tr.") at 13.

[2] *Id.* at 13-14.

Given that RFC, the ALJ found Byland incapable of performing any past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Byland could perform.[4] The ALJ, therefore, found Byland not under a disability.[5]

Byland asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Byland argues that the RFC finding lacks the support of substantial evidence because the ALJ (1) did not properly weigh the opinion of her treating physician and (2) improperly evaluated her credibility.

I conclude that the ALJ did not properly weigh and articulate with respect to the opinion of Byland's treating physician, as required by applicable regulations and case law. I will, therefore, recommend remand for reconsideration of the RFC finding.

## Analysis

### A.    Introduction

This case turns on the ALJ's treatment of the evaluation of Dale C. Angerman, M.D., Byland's treating physician. Dr. Angerman opined that Byland had chronic obstructive

---

[3] *Id.* at 15.

[4] *Id.* at 16.

[5] *Id.* at 17.

pulmonary disease and fibromyalgia,[6] which the ALJ found severe impairments.[7] Dr. Angerman further opined that these impairments resulted in substantial work-related limitations.[8] The ALJ did not include these limitations in the RFC finding.[9]

The ALJ's decision did not identify Dr. Angerman as a treating source, did not reference his RFC evaluation, did not assign weight to Dr. Angerman's opinion, and gave no reasons for failing to adopt Dr. Angerman's opinion about limitations.[10] The ALJ did incorporate those limitations into a hypothetical posed to the VE.[11] In response, the VE testified that no jobs existed in significant numbers that Byland could perform.[12]

The Commissioner does not dispute that the ALJ failed to comply with applicable regulations in the treatment of Dr. Angerman's opinion. He argues, nevertheless, that such failure constitutes harmless error.

---

[6] *Id.* at 401.

[7] *Id.* at 13.

[8] *Id.* at 401.

[9] *Id.* at 13-14.

[10] *Id.* at 15.

[11] *Id.* at 38.

[12] *Id.* at 38-39.

**B.** **The treating source rule**

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[13]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[14]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[15] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[16]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[17] Although the treating

---

[13] 20 C.F.R. § 404.1527(d)(2).

[14] *Id.*

[15] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[16] *Id.*

[17] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[18] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[19] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[20]

In *Wilson v. Commissioner of Social Security*,[21] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[22] The court noted that the regulation expressly contains a "good reasons" requirement.[23] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

---

[18] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[19] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[20] *Id.* at 535.

[21] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[22] *Id.* at 544.

[23] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[24]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[25] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[26] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[27] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[28]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency

---

[24] *Id.* at 546.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

with other evidence in the case record.[29] Second, the ALJ must identify for the record evidence supporting that finding."[30] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[31]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[32] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[33] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[34] or that objective medical evidence does not support that opinion.[35]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[29] *Wilson*, 378 F.3d at 546.

[30] *Id.*

[31] *Id.*

[32] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[33] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[34] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[35] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[36] The Commissioner's *post hoc* arguments on judicial review are immaterial.[37]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[38]

- the rejection or discounting of the weight of a treating source without assigning weight,[39]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[40]

---

[36] *Blakley*, 581 F.3d at 407.

[37] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[38] *Blakley*, 581 F.3d at 407-08.

[39] *Id.* at 408.

[40] *Id.*

-8-

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[41]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[42] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[43]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[44] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[45] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[46]

In *Cole v. Astrue*,[47] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues

---

[41] *Id.* at 409.

[42] *Hensley*, 573 F.3d at 266-67.

[43] *Friend*, 375 F. App'x at 552.

[44] *Blakley*, 581 F.3d 399.

[45] *Id*. at 409-10.

[46] *Id*. at 410.

[47] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[48] The *Cole* court held that where the ALJ adopts the treating physician's "category of diagnosis," the opinion is not patently deficient even if the ALJ rejects the limitations opined.[49] And where the ALJ adopts the diagnosis of the treating physician but not the opined limitations without explanation, the goal of the treating source rule has not been met.[50]

## C.     The application of the treating source rule to the ALJ's treatment of Dr. Angerman's opinion

The ALJ did not identify or discuss Dr. Angerman's RFC opinion.[51] The ALJ did not describe Dr. Angerman as a treating source or state what weight, if any, was assigned to his opinion.[52] The ALJ gave no reasons for not incorporating Dr. Angerman's limitations into the RFC finding. The Commissioner concedes total non-compliance with the treating source regulations but maintains that harmless error excuses this default.

As for harmless error, the Commissioner did not implicitly adopt Dr. Angerman's opinion as to limitations or make findings consistent with it. And this is not a case where the opinion of the treating source is so patently deficient that the Commissioner could not credit

---

[48] *Id.* at 940.

[49] *Id.*

[50] *Id.*

[51] Tr. at 15.

[52] *Id.*

-10-

it. As in *Cole*, the ALJ accepted Dr. Angerman's diagnostic findings as to impairments but did not incorporate his opined limitations into the RFC. And given the total departure of the ALJ from the standards set out in the regulations and in *Wilson* and its progeny,[53] I cannot conclude that the ALJ's treatment of Dr. Angerman's opinion here satisfies the goals of the regulations

Nevertheless, the Commissioner argues that the reasoning of the Sixth Circuit in *Heston v. Commissioner of Social Security*[54] supports a finding of harmless error. The court decided *Heston* in 2001, three years before its opinion in *Wilson*. As extensively discussed above, the court in a series of opinions after *Wilson* has underscored stringent requirements for compliance with the treating source regulations. That body of precedent has also narrowly defined the harmless error exception to those requirements.

The *Heston* court affirmed the Commissioner's findings despite the ALJ's failure to discuss the report of a treating physician.[55] In doing so, it conducted its own review of the record and concluded that substantial evidence existed to support those findings. But, as the Sixth Circuit cautioned in *Blakley* in 2009, based on its *Wilson* jurisprudence, harmless error does not exist merely because the reviewing court concludes that substantial evidence exists

---

[53] I note that the ALJ who decided this case is located in Springfield, Massachusetts, outside of the Sixth Circuit. Tr. at 11.

[54] *Heston*, 245 F.3d 528.

[55] *Id.* at 535-36.

to support the ultimate finding.[56] This Court must view the harmless error argument through the sharper lens of cases such as *Wilson*, *Blakley*, and *Cole*, not that of *Heston*. As explained above, the ALJ's shortcomings here cannot be excused as harmless error consistent with those cases.

## C.     The credibility finding

Byland challenges the ALJ's finding that her statements about intensity, persistence, and limiting effects of symptoms was not credible to the extent inconsistent with the RFC finding.[57]

The ALJ does provide some articulation of the reasons and evidence supporting this finding.[58] Arguably, this finding survives substantial evidence scrutiny. But given the recommendation of remand on the treating physician rule issue, Byland's challenge need not be resolved at this time. If the case is remanded, and the ALJ makes a more restrictive RFC finding, credibility must be reevaluated. In any event, the articulation of reasons supporting the finding is not "a model that future disability decisions should emulate."[59] Should the District Judge order a remand, the ALJ should provide more extensive and clearer

---

[56] *Blakley*, 581 F.3d at 409-10.

[57] Tr. at 15.

[58] *Id.*

[59] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

-12-

articulation of the reasons supporting the credibility finding based on the standards discussed in *Cross v. Commissioner of Social Security.*[60]

## Conclusion

Based on the foregoing, I recommend that the decision of the Commissioner denying Byland's applications for disability insurance benefits and supplemental security income be reversed and the case remanded for reconsideration of the RFC finding and the credibility finding consistent with this opinion.


Dated:   May 18, 2012                                   s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[61]

---

[60] *Id.* at 732-33.

[61] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).